**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:14-CR-102(1) |
| | § | |
| SULTAN ADNAN AL-BIZRI | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Sultan Adnan Al-Bizri's ("Al-Bizri") pro se Motion for Early Termination of Supervised Release (#173) wherein he seeks early termination of his three-year term of supervised release imposed in the case at bar. On March 13, 2024, Al-Bizri began serving two concurrent terms of supervised release in the Southern District of Texas imposed by judges in the Northern District of Texas (Docket No. 5:10CR00037) and the Eastern District of Texas (Docket No. 1:14CR00102). Al-Bizri's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas reviewed the filings and indicated that Al-Bizri's supervising Probation Officer in the Southern District of Texas is not opposed to Al-Bizri's request for early termination although the officer noted some prior charges for violent offenses against Al-Bizri. The United States Attorney's Office in the Eastern District of Texas is opposed to the early termination of Al-Bizri's supervised release. Al-Bizri's Probation Officer in the Eastern District of Texas is also opposed to the early termination of his term of supervised release and recommends that his supervision be continued as ordered. Having considered the motion, the viewpoints of Probation in the Southern and Eastern Districts of Texas, the Government's position, the record, and the applicable law, the court is of the opinion that Al-Bizri's motion should be denied.

I.    Background

On June 9, 2010, a federal grand jury in the Northern District of Texas, Lubbock Division, returned an Indictment charging Al-Bizri with an array of firearms offenses. Although Al-Bizri ultimately pleaded guilty to possession of a firearm by a convicted felon, he was also charged with possession of a stolen firearm, possession of a firearm with an obliterated serial number, and possession of an unregistered firearm. The Presentence Investigation Report ("PSR") indicates that the case arose from a dispute with another individual in a Wal-Mart parking lot over a fender-bender that occurred on January 22, 2010. The dispute ultimately led to a heated exchange in which Al-Bizri fired a revolver at the victim. One round struck the victim in the right side of his back and a second round grazed his stomach. Al-Bizri was arrested seven days later during a traffic stop in which he was found to be in possession of a stolen Kel-Tec semiautomatic pistol located in his waistband. A stun gun and a partially smoked blunt of marijuana were recovered from his vehicle. A search of Al-Bizri's residence revealed a .22 caliber revolver with an obliterated serial number under a mattress, a 12-gauge pump-action shotgun, and an unregistered .410 gauge short-barreled shotgun. A safe containing 10.44 grams of Xanax, 1.24 grams of marijuana, 10.56 grams of mushrooms, 211.19 grams of marijuana, ammunition, and drug paraphernalia was also located during the search. On November 19, 2010, United States District Judge Sam R. Cummings sentenced Al-Bizri to a term of 168 months' imprisonment to be followed by a three-year term of supervised release for this offense. Al-Bizri was also charged by state authorities with aggravated assault causing serious bodily injury as a result of the shooting. He pleaded guilty to that offense and was sentenced to 14 years of imprisonment on April 12, 2011.

On October 1, 2014, a federal grand jury for the Eastern District of Texas, Beaumont Division, returned a ten-count Indictment charging Al-Bizri and four codefendants with a variety of offenses related to attempts to bring in and distribute heroin in the Federal Correctional Complex ("FCC") in Beaumont, Texas, where Al-Bizri was imprisoned for his prior firearms conviction. Officials at FCC Beaumont learned that Al-Bizri and other inmates were involved in bringing narcotics into the United States Penitentiary in Beaumont. Al-Bizri arranged for a codefendant to be supplied with heroin intended for eventual smuggling into the penitentiary during visitation. Authorities seized two balloons containing heroin from a codefendant, which were intended for delivery to Al-Bizri. A subsequent search of the codefendant's residence revealed additional heroin intended for smuggling. The total quantity of heroin seized was 44.01 grams. In addition to his previous firearms offense, Al-Bizri has prior convictions for unlawful possession of a dangerous drug (Zoloft), possession of marijuana (2x), and possession of Alprazolam. Al-Bizri's PSR indicates that he has a long history of poly-substance abuse beginning at age 13, which includes the daily use of marijuana, Xanax, methamphetamine, and heroin. He has also experienced mental health problems, including attempts to take his own life on at least three occasions. On June 23, 2015, United States District Judge Ron Clark sentenced Al-Bizri to 55 months' imprisonment to be followed by 3 years of supervised release for his drug offense. Al-Bizri's term of supervised release expires on March 12, 2027.

In his motion seeking early termination, Al-Bizri, age 39, asserts that he has demonstrated sustained rehabilitation, full compliance with all supervision conditions, and successful reintegration into the community. He claims that after serving more than 13 years in custody, followed by progressive stages of supervision without violation, continued supervision is no longer

necessary to accomplish the purposes of sentencing. Al-Bizri elaborates that since placement in a residential reentry center, he has maintained consistent employment and has continued working throughout state parole, electronic monitoring, and federal supervised release. He explains that he has been employed as a restaurant server, a position requiring reliability, accountability, and regular public interaction. He maintains that his sustained employment demonstrates stability, responsibility, and continued lawful reintegration into society. Al-Bizri adds that he also completed vocational trade school training and formed and operates a lawful small business, reflecting stability, responsibility, and continued self-sufficiency. Al-Bizri's business is identified by a writer of one of his character letters as Sultan's Hookah, LLC.

II.    Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a), 3583(e).

Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018).  In addition, the United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2]  "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021).  Instead, the defendant bears the burden of demonstrating that early termination is warranted.  *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018).  Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022).  "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes."  309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

Although the Probation Officer in the Southern District of Texas is unopposed to early termination of Al-Bizri's supervised release, this fact, standing alone, is insufficient to justify

---

[2] Specifically, the Guidelines list:  (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

granting his request for early termination of his three-year term of supervised release. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Bondy*, No. 19-232, 2026 WL 1282742, at *2 (E.D. La. May 11, 2026) ("full compliance . . . is merely what is

6

expected of all people serving terms of supervised release." (quoting *Karacsonyi v. United States*, No. 97-1220, 1998 WL 401273, at *1 (2d Cir. June 10, 1998))); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were

7

entitled to early termination, 'the exception would swallow the rule.'"  *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1).  *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).  This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release.  *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2.  In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination.  *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).  Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it."  *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that

early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

In this situation, the court finds that Al-Bizri's post-release conduct does not warrant early termination of his supervised release. Although he appears to have complied with his conditions of release to date, he identifies no new or exceptional circumstances or needs that would merit early release from supervision. Al-Bizri provides no information to the court regarding his place of residence, with whom he resides or for whom he provides, or any community, religious, or recreational pursuits in which he participates. In view of his involvement in serious firearms and drug-smuggling offenses and his prior acts of violence, his history of poly-substance abuse, and his mental health problems, the court is of the opinion that Al-Bizri should continue on supervised release at this time. Al-Bizri fails to explain how the conditions of his supervised release limit his business opportunities, interfere with his family responsibilities, impede any medical treatment, or otherwise impact his daily life in a significant manner. Al-Bizri does not clarify how being on supervised release keeps him from taking advantage of any employment or investment opportunities, furthering any financial goals, maintaining contact with or assisting his family[3], or engaging in recreational, religious, or volunteer activities. Under the circumstances, the court

---

[3] Although Al-Bizri expresses an interest in visiting his father in Lebanon, the latest Travel Advisory from the United States Department of States issued May 6, 2026, warns: "Do not travel to Lebanon for any reason. U.S. citizens are at risk due to civil unrest, crime, terrorism, risk of wrongful detention, kidnapping, and limited health facilities." The United States Embassy in Lebanon further cautions: "Do Not Travel to Lebanon for any reason due to the risk of crime, terrorism, unrest, kidnapping, landmines, and armed conflict."

finds the current conditions of release are not onerous and remain appropriate in view of his offenses of conviction and his history of substance abuse and mental health problems.

Requiring Al-Bizri to complete his entire three-year term of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Al-Bizri. Generally, early termination of supervised release is not granted unless there are significant medical concerns that are not being addressed, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Al-Bizri does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions of release imposed by judges in two different courts for the past three years. Thus, although Al-Bizri appears to be on the right path, the court believes that the completion of his full term of supervised release appropriately reflects the seriousness of his offenses of conviction, deters future criminal conduct, safeguards against the resumption of prior poly-substance abuse, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at \*4. "Supervised release is meant as a safety net to support reentry into the community." *Bondy*, 2026 WL 1282742, at \*3. In this instance, there is no reason to terminate prematurely this safety net as to Al-Bizri. "Allowing U.S. Probation to continue to monitor and guide [Al-Bizri] is advantageous as it is able to offer resources, guidance and accountability to [Al-Bizri] to ensure he successfully continues his rehabilitation journey." *United States v. Clausell*, No. 1:20cr0091-LG-RPM-1, 2026 WL 1008154, at \*2 (S.D. Miss. April 14, 2026).

As Probation points out:

Although Mr. Al-Bizri's success and continued compliance during his supervision term is commendable, his history of violence should not be overlooked.  It is the

10

policy of the U.S. Probation Office in the Eastern District of Texas to recommend denying early termination for any individual convicted of violent offenses or crimes involving firearms. It is also concerning that the instant federal offense was committed in the Bureau of Prisons while he was serving a term of imprisonment for a prior offense. This behavior suggests a heightened risk for recidivism. There also appears to be no extraordinary or compelling reason to warrant early termination, outside of general compliance with the Court's conditions. Given the circumstances of this case, the U.S. Probation Office in the Eastern District of Texas, Beaumont Division respectfully recommends the Court deny the motion and allow Mr. Al-Bizri to continue supervision through the current expiration date of March 12, 2027.

The court concurs with the assessment of the situation by the Probation Office for the Eastern District of Texas and finds that the early termination of Al-Bizri's three-year term of supervised release would not serve the interest of justice.

III.    Conclusion

In accordance with the foregoing, Al-Bizri's pro se Motion for Early Termination of Supervised Release (#173) is DENIED.

SIGNED at Beaumont, Texas, this 26th day of May, 2026.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE